## WILSON *a.* BRITTON.

*Supreme Court, First District ; Special Term, January,* 1858.

ATTACHMENT.—FRAUDULENT INTENT.—REQUISITES OF AFFIDAVIT.

On a motion to vacate an attachment, the plaintiff's affidavits in opposition are to be received only for the purpose of explaining or contradicting the moving affidavits; and unless the attachment can be sustained on the original affidavits, it should be discharged.

Proof that the debtor threatened to make an assignment for the benefit of cred-
itors, is not in itself sufficient to authorize the granting of an attachment.

But a threat to make an assignment, and put his property out of his hands, unless
his creditor would accept a part in full, is presumptive evidence of a fraudu-
lent intention.

Under the act to abolish imprisonment for debt, it was the general practice to
treat the *declarations* of the debtor as sufficient evidence of his intent, without
waiting for *acts* tending to put that intent to effect; and they should be so
treated under the provisions of the Code.

The same rule is applicable to affidavits upon an application for an order of arrest.

Whether an affidavit showing that the debtor was about to leave the State or to
assign, &c., and that the creditor believed that his intent was fraudulent, would
be sufficient to authorize the issuing of an attachment,—*Query ?*

Motion to vacate an attachment.

The facts appear sufficiently in the opinion of the court.

INGRAHAM, J.—The motion in this case is to discharge an at-
tachment, issued against the defendant upon the ground that he
was about to dispose of his property to defraud his creditors.
The affidavit upon which the attachment was granted stated the
indebtedness, and threats of the defendant to make an assign-
ment of his property, and that plaintiff would get nothing, and
to put his property out of his hands sooner than pay more than
one-third of his debts; and on the plaintiff's refusing to take less
than the amount of his claim, the defendant threatened to go
home and put his property out of his hands.

Unless this affidavit is sufficient to sustain the attachment, it
cannot be upheld by the other affidavits used in this motion.
They are to be received for the purpose of explaining or contra-
dicting the affidavits on which the defendant moves for a dis-
charge of the warrant.

The defendant in his affidavits denies that he made any other
threats than to say that he would make an assignment for the
benefit of his creditors. Such an assignment the law allows him
to make, and also to give preferences to one creditor to the ex-
clusion of another. A threat to do what the law allows cannot
be sufficient evidence to warrant the conclusion of an intent to
make a fraudulent disposition of his property; and unless the
affidavit of the plaintiffs shows an intent to do more than this,
the motion must be granted.

The words used in the amended section of the Code are sim-

Wilson *a.* Britton.

ilar to those used in the act to abolish imprisonment, and are to receive the same construction. They are, where the defendant is about to *assign* or *dispose of*, &c.

There may be fraud in an assignment of property, as well as in any other disposition of it, and so the Legislature intended by using the word "assign" in that connection. It was not qualified by calling the assignment in this case one for the benefit of creditors, or by so stating to the plaintiffs, but it was a general threat to assign, and to put his property out of his hands, to compel a creditor to take less than the debtor owed him. Such a threat must always be looked upon with suspicion, and a debtor who resorts to it, should be careful to use words that will show his intent to be an honest one, if he would avoid the presumption of fraud, which such attempts naturally suggest.

I am not satisfied that the defendant's intentions were merely to execute an assignment for the benefit of creditors. The words used do not express such an intention, and the reasonable understanding of them would be far more extended; and the more so when we take in connection with them the other remark made by him, that he would go home and sell his goods, and would do nothing for his creditors until compelled to.

I cannot but conclude that the defendant intended to be understood as saying that he would make such a disposition of his property as to prevent the plaintiffs from recovering any thing, in order to force them into a compromise.

I cannot attach much weight to the fact that he subsequently made an assignment for the benefit of all his creditors, because that was made after he had notice of the attachment, and of course after he had been warned of the danger attending the course he had previously taken.

It is urged, however, for the defendant, that threats to do such acts merely, without proof of any attempt to put these threats into effect, are not sufficient to convict the defendant of intended fraud; and that there must be in addition some act showing an intention to carry out these threats.

The degree of evidence necessary to prove such intent has been referred to by the Supreme Court in Smith *v.* Luce (14 *Wend.*, 237). Chief-justice Savage says: "Had the affidavit stated positively that the defendant had declared his intention to remove his property to avoid the payment of his debts * * *

such an affidavit would be proof upon which the justice could act judicially, and draw his own conclusion, whether the defendant was about to do the acts which would authorize the issuing an attachment."

Under the act to abolish imprisonment, the practice was general, to treat the declarations of the debtor as sufficient evidence of his intent, without waiting for acts tending to put that intent to effect. No better evidence of a man's intent can be obtained than that intent expressed by himself in language; and if a court is required to wait for acts before such intent can be inferred, there would be but few cases, if any, in which the intent would not have been consummated by the act, before judicial proceedings could be commenced, and the provisions of the statute allowing a creditor to interfere and prevent the consummation of fraudulent intentions, would be of no avail.

In Fulton *v.* Heath (1 *Barb.*, 552), the proof of the debtor's intended departure from the State with intent to defraud his creditors, consisted of an affidavit which stated that the debtor said he was going to leave the county and go to Canada." This was held sufficient evidence of the intended departure, and coupled with the affidavit of the creditor, that he believed the debtor was about to leave with intent to defraud, was held sufficient to sustain an attachment.

Although I should hesitate as to the sufficiency of an affidavit of the creditor, that he believed the intent to be fraudulent, yet the case may be cited as authority to show that declarations of the debtor were sufficient to prove his intent without any act being shown towards carrying out such intention. Justice Paige says: " The affidavit states that Heaton was about to depart from the county where he last resided. This fact Fulton states positively on the declaration of the debtor, and then adds his belief, &c., of intent to defraud his creditors. It states positively all the facts and circumstances necessary to be stated to entitle Fulton to an attachment.

There are many other cases arising under the non-imprisonment act and the act relating to non-resident debtors, where similar decisions have been made. The cases above cited, however, are sufficient to show that the declarations of the debtor are competent without other proof to establish his intention to do an act forbidden by laws which authorize the issuing of

attachments. The same rule is applicable to affidavits for the purpose of ordering an arrest.

The motion is denied, with $10 costs.

---

THE PEOPLE on the relation of BURROUGHS *a.* WILLETT.

*Supreme Court, First District; At Chambers, December,* 1857.

HABEAS CORPUS.—CAUSE OF ACTION AGAINST INNKEEPER OR CAR-RIER.—ARREST.—EXECUTION AGAINST THE PERSON.

Upon *habeas corpus* it is competent to inquire whether such process as that by virtue of which the prisoner is held in custody, though admitted to be proper in form, is allowable by law in the action in which it is issued; and if so, wheth-er the issue of the process in question was authorized by a judgment, order, or decree of court, or by any provision of law.

The case of the Bank of the United States *v.* Jenkins (18 *Johns.,* 305) explained, as not to be deemed an authority to the contrary.

An action on the common-law liability of an innkeeper is founded in tort and not in contract.*

An action against an innkeeper on his common-law liability, for negligent loss of baggage, is not an action for injuring or wrongfully taking, detaining, or con-verting property within the meaning of section 179 of the Code.

In such an action the defendant cannot properly be held to bail, except under section 179, by an order of a judge, on proof, in addition to the facts constitu-ting the cause of action, that the defendant is a non-resident of the State, or is about to remove therefrom.

That as a record of judgment in such a case does not show all the facts necessary to authorize an arrest in the suit before judgment, execution against the body cannot be properly issued on it, at least without the order of a judge, and on proof of the additional facts required to entitle the plaintiff to issue such ex-ecution.

*Habeas Corpus,* directed to the sheriff, to bring before the judge the body of the relator, who was held in custody upon an execution against the person.

The facts appear sufficiently in the opinion.

PEABODY, J.—This is a motion for discharge of the relator on *habeas corpus.*

---

* Compare Campbell *v.* Perkins (4 *Seld.,* 430).